agreed to let remain in Captain Scudder's hands for use in the business. This incident might have considerable weight in determining the question of partnership between the parties, though not a controlling one (*Walker* v. *Hirsch, supra*), but cannot be troublesome in these accounts. Captain Scudder's bookkeeper has credited the amounts to Mr. Budd, and in stating the account there can be no objection to charging the defendant with the sum.

There should be a reference to a master to take and state an account .on the lines suggested, with leave to apply for further instructions if necessary.

*Messrs. Grey & Grey,* for the appellant.

*Mr. Henry M. Snyder, Jr.,* for the respondent.

PER CURIAM.

Decree affirmed, for the reasons given in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, GARRISON, LIPPINCOTT, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, KRUEGER—10.

*For reversal*—ABBETT, DIXON, SMITH—3.

---

HENRY PRICE et al., appellants,

*v.*

MATTHIAS PRICE, executor &c. of Daniel Price, deceased, respondent.

1. Testator devised and bequeathed to his wife all his real and personal estate for life, with power of disposition, but provided that if she died intestate "my property" be distributed according to the following bequests. Then followed a devise of certain land, and several bequests, after which were direc-

tions to be followed in case "my property" fall short of the bequests, or "my estate" exceed the bequests. A codicil confirmed the will, except as disposition of "my property" is changed by the codicil, and finally expressed the hope that, as there were no debts against his estate, the legacies would be paid without such waste as would call for large sacrifice of real estate or undue pressure in collection of mortgages.—*Held*, that testator intended his real estate to be included in the property which was to go to pay the bequests.

2. In construing a will to determine whether testator intended his legacies to be charges on the real estate, the fact that the legacies far exceeded the personal property may be considered.

On appeal from a decree advised by Vice-Chancellor Pitney, in *Price, Executor &c.*, v. *Price et al.*

The bill in this case was filed by the executor, asking for the construction of the will, and the contest was between certain legatees and the devisees of the real estate as to whether the legacies were charged on the real estate.

The vice-chancellor, after hearing Mr. D. A. Ryerson, for the complainants, and Mr. Robert H. McCarter, for the devisees of the real estate, without calling on the several counsel for the legatees, delivered the following oral opinion :

I am certainly very much obliged to counsel of defendants for the argument he has made, and having recently had occasion to go through the line of cases which he has cited, I perhaps was better able to appreciate it, and am sorry to say that for the same reason he did not convince me that he was right in this case.

I have looked at this will carefully, and have compared it in my mind with the case of *Bragaw* v. *Bolles, 6 Dick. Ch. Rep. 84*, recently decided by me, and also with the cases there cited and the principles illustrated, and I come to the conclusion that in this case the legacies are charged on the lands. I can state, very briefly, my reasons, and give the parties an opportunity to take an appeal much quicker than if I took the case home and wrote out my views at length.

In the first place, the very first devise that the testator makes is, " I give, devise and bequeath to my wife Charity all of my

real and personal estate "—that is a complete devise of all his property, real and personal—" to have and to hold during her natural life" &c., " and dispose of at any time she may deem advisable, by will or otherwise, but should she die intestate then I direct distribution of *my property* to be made according to the following bequests."

That direction of distribution of his property, to be made "according to the following bequests," must, as it seems to me, be held to refer to the property he has just spoken of, that is, all his "real and personal estate." That shows what property he had in his mind and intended should be distributed by the bequests he afterwards made.

He goes on and makes bequests, and in every one he uses the words "give and bequeath," except where he gave land in Michigan. After that he uses the words "I give and bequeath" in all these fifteen or twenty bequests, and counsel made a strong argument based on the use of those words, but I think it fails entirely when we consider that what he gave was money. It was perfectly proper to use those words, even though that money was the result of the sale of land.

Then, after giving those bequests he uses this language : "Should *my property* fall short in the settlement of my estate of the within-named bequests "—what property ? He had in the beginning of his will used the words " all of my real and personal property," as I have already said, and he wished the " distribution of my property according to the following bequests." Now, when he spoke of " should my property fall short in the settlement of my estate of the within-named bequests," he referred to the same property that he had referred to in the second item of his will, where he had given and devised all his real and personal estate to his wife; so that I have not any doubt that the property he referred to in that clause was real and personal property both. He goes on then and uses this language :

" Should my property fall short in the settlement of my estate of the within-named bequests, I wish the legacies to individuals, the professorship to the College at Princeton, the Old Ladies' Home of Newark, and German Theological School, to be paid in full and deductions made from the various be-

Price *v.* Price.

quests made to benevolent societies [it means other bequests to benevolent societies] in proportion to the amount given to each, and should the amount of *my estate* exceed the bequests, then I wish the Theological Seminary at Princeton, and German Theological School in the care of the Newark Presbytery, to be made my residuary legatees in equal shares."

Now, what did he mean by the words " my estate?"

There are abundant authorities for the position that where a person uses the words "my property " and " my estate," and he has immediately before that been dealing with real estate as well as personalty, that by those words he means real and personal estate. A leading case in that line is *Laing* v. *Barbour, 119 Mass. 523,* referred to in *Bragaw* v. *Bolles.* And in order to arrive at the conclusion that by the words " my estate" and " my property " in this last clause—the residuary clause here referred to—was meant real and personal estate, we have by no means to go as far as the court went in *Laing* v. *Barbour,* in which I think they went too far. But the same line of reasoning as led to the conclusion arrived at there, leads to the same conclusion here.

Then we go on, and in the first codicil to his will he says : " I hereby expressly confirm my former will dated 6th day of May, 1875, except so far as the disposition of my property is changed by this codicil." Now, he uses the general phrase " property " there, and the presumption is that he means *the* property that he had spoken of in his will, and there he spoke of both real and personal property.

Then we come to the second or last part of it, and to the last clause of it. I confess I do not see how it is possible to escape the effect of that. I listened attentively and with great satisfaction to the very ingenious and instructive argument of Mr. McCarter on that subject, and I am unable to adopt his solution of it. "And lastly, as I have no debts or demands against my estate, I hope the legacies may be paid by my executors without such waste [or " haste," whichever you may choose to make it ; say " waste " is a mistake for " haste "] as will call for large sacrifice of real estate or undue pressure in the collection of mortgages." I think it would be a strained construction to say

that the sacrifice of real estate there did not refer to the sacrifice in its sale in order to pay these legacies, or that it referred only to the sacrifice of real estate which should be sold under foreclosure—other people's real estate. It seems to me that the natural construction to put upon that language is that it referred to the real estate of the testator which he expected to be sold.

Therefore, I think that the testator meant that his real estate should be included in the property which was to go to pay these bequests. But the difficulty which I stated some time ago has not yet been spoken to by counsel, and if they wish to be heard I will hear them, and that is whether or not, under the implication contained in this last codicil, there is a power of sale in the executors on which they can go on and sell and give a good title or whether it is not best that they should file a cross-bill, to which, of course, all the heirs-at-law must be made parties, by which the property may be ordered sold. It is not clear that there is not a power of sale. The language is:

"And lastly, as I have no debts or demands against my estate, I hope the legacies may be paid by my executors without such waste as will call for large sacrifice of real estate or undue pressure in the collection of mortgages."

A very ingenious argument may be made, and I have no doubt counsel have in their briefs a very ingenious argument in favor of the position that that gives a power of sale. But, *cui bono?* Why ask a purchaser to take title under that, when, if my view of the will is right, the property can be sold under a bill in which some of the legatees or the residuary legatee shall be actors, and a perfect title made? There the sale will be not by the executors as such under the will, but by the court—by decree of the court that it be sold to pay these legacies, and so much only of it shall be sold as is necessary for that purpose, and no question could be made about the title at all.

Now, there is one other thing bearing upon the construction of this will, and that is the amount of property. I may as well mention it. It is clear that there is a deficiency of personal estate to pay these legacies—a very large deficiency—and probably to satisfy them it will require nearly or quite all the real

and personal property.   There has been no valuation of the real estate, but the personal property amounted to only $60,000 and the legacies are over $100,000.   Now, the testator knew that. He was a man of intelligence and yet he gave these large legacies.   Now, while that, standing by itself, as has been decided in this state, is not sufficient except in the case where there are no heirs-at-law—is not of itself sufficient to hold that the legacies are charged on the real estate—yet it is a very strong circumstance, as I think was said by Judge Dodd in his opinion in *Johnson* v. *Poulson, 5 Stew. Eq. 390*—a very strong circumstance to indicate that the testator did intend that his real estate should pay his legacies.   In addition to what I find on the face of the will, I feel that it is in confirmation of my view.

I therefore hold that these legacies are charged on the land and that the legatees have a right to have the land sold to pay them.   I hold, of course, that there is no doubt as to the identity of the benevolent institutions, and the bequest in that one case may be given to that institution—Board of Church Erection.

*Mr. Robert H. McCarter,* for the appellants.

*Mr. David A. Ryerson* and *Mr. Frederick G. Burnham,* for the respondent.

PER CURIAM.

Decree affirmed, for the reasons given in the court of chancery.

*For affirmance*—ABBETT, DEPUE, DIXON, GARRISON, LIPPINCOTT, REED, VAN SYCKEL, BOGERT, BROWN, KRUEGER—10.

*For reversal*—None.